**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOSHUA L. BRUNO, BRUNO, INC., WOOD PECKERZ
OF COLOMBIA, LLC, TAYLOR PARK LOFTS, LLC,
and TRE FAGIOLI, LLC,

          Plaintiffs,                        Civil Action No.1:26-cv-06133

    -against-

SILVER ARCH CAPITAL PARTNERS, LLC,

          Defendant.

---

**COMPLAINT**

Plaintiffs Joshua L. Bruno, Bruno, Inc., Wood Peckerz of Colombia, LLC, Taylor Park

Lofts, LLC, and Tre Fagioli, LLC, by and through their undersigned attorneys, Alvendia, Kelly &

Demarest, LLC, complaining of the defendant, Silver Arch Capital Partners, LLC, state and allege

as follows:

**NATURE OF THE ACTION**

1.     Plaintiffs bring this action against defendant Silver Arch Capital Partners, LLC

("Silver Arch"), a New Jersey-based commercial lender, asserting claims for (I) Breach of

Contract, (II) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (III)

Conversion.

2.     This action arises from Silver Arch's inducement of Plaintiffs to pay substantial

deposits and incur significant third-party costs in reliance on Silver Arch's express representations

that it was prepared to fund a commercial loan secured by Plaintiffs' real property, only to reverse

course at the eleventh hour and refuse both to close the loan and to return Plaintiffs' deposits.

## PARTIES TO THE ACTION

3.      The Plaintiffs in this action are:

a.      **Joshua L. Bruno** ("Bruno"), a natural person and citizen of the State of Florida, domiciled in Miami-Dade County, Florida. Bruno is the principal, managing member, and authorized representative of the Bruno Entities identified in this Paragraph 3 and elsewhere in this Complaint. Bruno is and was at all times relevant hereto authorized to pursue all claims and engage in transactions on behalf of Bruno, Inc., Wood Peckerz of Colombia, LLC, Taylor Park Lofts, LLC and Tre Fagioli LLC. Moreover, all deposits at issue in this action were wired to Silver Arch by Bruno or from accounts operated by the Bruno family for and on behalf of the Bruno Entities.

b.      **Bruno, Inc.,** a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 777 Brickell Avenue, Suite 500, Miami, Florida 33131. Bruno, Inc. is therefore a citizen of the States of Nevada and Florida for purposes of 28 U.S.C. § 1332(c)(1).

c.      **Wood Peckerz of Colombia, LLC**, a limited liability company whose members are:

(i)      Joshua L. Bruno, a citizen of the State of Florida, as alleged in subparagraph (a) above;

2

    (ii)    The Granma Bruno Family Irrevocable Trust (the "Janice Trust"), the citizenship of which, for purposes of diversity jurisdiction, is that of its trustee. The trustee of the Janice Trust is Janice Bruno, a citizen of the State of Florida, domiciled in Dade County, Florida; and

    (iii)    Mercury Capital, LLC, a limited liability company whose members are:

        (A)    the Janice Trust, whose citizenship is as alleged in subparagraph (c)(ii) above; and

        (B)    Houston Loop Holdings ("HLH"), a Limited Liability Company whose members are the Janice Trust, whose trustee is a citizen of Florida, and the Bruno Family Trust, whose trustee is a citizen of the state of Florida.

Accordingly, Wood Peckerz of Colombia, LLC is a citizen of the State of Florida.

d.    **Taylor Park Lofts, LLC**, a limited liability company whose members are the same as those of Wood Peckerz of Colombia, LLC identified in subparagraph (c) abovenamely, Joshua L. Bruno, the Janice Trust, and Mercury Capital, LLC— whose citizenships are alleged in that subparagraph. Accordingly, Taylor Park Lofts, LLC is a citizen of the State of Florida for purposes of diversity jurisdiction.

e.    **Tre Fagioli, LLC**, a limited liability company The members of Tre Fagioli, LLC are the same as those of Wood Peckerz of Colombia, LLC identified in subparagraph (c) above—namely, Joshua L. Bruno, the Janice Trust, and Mercury Capital, LLC—whose citizenships are alleged in that subparagraph. Accordingly,

3

Tre Fagioli, LLC is a citizen of the State of Florida for purposes of diversity jurisdiction.

Bruno, Inc., Wood Peckerz of Colombia, LLC, Taylor Park Lofts, LLC, and Tre Fagioli, LLC are collectively referred to herein as the "Bruno Entities."

4.     Defendant Silver Arch Capital Partners, LLC ("Silver Arch") is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 411 Hackensack Avenue, Suite 803, Hackensack, New Jersey 07601, engaged in the business of commercial lending and financing. Upon information and belief, all members of Silver Arch are citizens of the State of New Jersey.

## JURISDICTION

5.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds the sum or value of $75,000,  and equals or exceeds an amount not less than $492,105.38, exclusive of interest and costs. There is complete diversity of citizenship between the Plaintiffs and the Defendant: as alleged in Paragraphs 3 and 4 above, the Plaintiffs are citizens of the States of Florida and Nevada, and no Plaintiff shares citizenship with Silver Arch or its members, who are citizens of New Jersey.

## VENUE

6.     Venue in this Court is proper pursuant to the express forum selection clause contained in the Loan Application, which provides that Borrower "consent[s] to the jurisdiction of any state or federal court sitting in the State of New York, New York County for adjudication of any dispute" arising from the Loan Application and related transactions.

4

**RELEVANT FACTS COMMON TO ALL COUNTS**

7. At all relevant times, Bruno was the authorized representative of the Bruno Entities, and wired deposits from his own accounts and the accounts of Bruno, Inc. on behalf of the Bruno Entities, which owned and controlled various parcels of commercial real estate located in the State of Louisiana and Texas (the "Subject Properties").

8. In late 2022, Mr. Bruno engaged RIPCO Real Estate ("RIPCO") to identify potential lenders to obtain financing arrangements for a portfolio of real property owned by the Bruno Entities.

9. RIPCO identified Silver Arch as a potential lender and facilitated introductions between Plaintiffs and Silver Arch's senior representatives, including its Executive Managing Director and Jonathan Weiner ("Weiner"), a Senior Director of Silver Arch.

10. On November 9, 2022, Silver Arch issued a term sheet for a proposed $37.5 million loan (the "Fully Executed $37.5MM Term Sheet"). Silver Arch subsequently issued a term sheet for a second, $11 million loan on November 21, 2022 (the "Fully Executed $11MM Term Sheet").

11. The $37.5MM Term Sheet required a Due Diligence Deposit of $175,000.00 in order to become effective. Bruno, on behalf of the Bruno Entities, executed the term sheet on November 17, 2022, and wired the Due Diligence Deposit on December 27, 2022.

12. Per the language of both Term Sheets, the Due Diligence Deposit was to be utilized for Silver Arch's costs related to "site inspection, appraisal, underwriting, and evaluation procedures." The Term Sheets further provided that the unused portion of the Due Diligence Deposit would be credited toward the Origination Fee at closing. Both Term Sheets expressly

5

provided that, in the event Silver Arch did not perform its obligations thereunder, the Due Diligence Deposits would be "refunded to the borrower."

13.     To date, no such performance occurred, and Silver Arch has never provided any accounting of how the $175,000 Due Diligence Deposit was expended, despite repeated demand for same.

14.     On March 17, 2023, Silver Arch issued a Loan Offer Confirmation letter, representing to Plaintiffs that it intended to continue proceeding toward loan closing and providing Plaintiffs with financing, and confirming at that time that "the amount of the loan Silver Arch Capital Partners is willing to make based on the valuation of the collateral and the terms, conditions, and requirements of the Term Sheet is $29,819,300, with a maximum initial draw of $19,101,800."

15.     In further proceeding toward closing, on or about April 14, 2023, Plaintiffs submitted a Loan Application to Silver Arch (the "Loan Application").

16.     By the terms of the Loan Application, Plaintiffs were required to pay, and did pay, a Good Faith Deposit to Silver Arch (the "Good Faith Deposit") in the amount of $82,018, which Silver Arch accepted and retained.

17.     The terms and conditions of the Loan Application and associated agreements governed the parties' respective rights and obligations with respect to the proposed loan transaction, including provisions relating to the treatment of deposits, the appraisal process, and the conditions precedent to closing. Consistent with customary industry practice, the Loan Application provided that the Good Faith Deposit would be applied to expenses incurred with the

6

underwriting process, with the unused portion "credited to the origination fee at closing or refunded to the borrower."

18.    On the same date, April 14, 2023, Silver Arch issued two letters to Plaintiffs (the "April 14 Letters").

19.    In the April 14 Letters, Silver Arch confirmed that its own appraisals of the Subject Properties supported the requested loan amounts.

20.    The April 14 Letters further stated that Silver Arch was "prepared to proceed pursuant to the terms and conditions of the Application and loan documents" and identified an expected closing date of on or before May 30, 2023.

21.    The April 14 Letters were signed on Silver Arch's behalf by its Executive Managing Director, and were issued on the same day that Plaintiffs signed the Loan Application and wired the Good Faith Deposit to Silver Arch.

22.    Plaintiffs reasonably relied on the representations contained in the April 14 Letters, including that Silver Arch's appraisals supported the loan, that Silver Arch was prepared to proceed, and that a closing was expected on or before May 30, 2023, in deciding to execute the Loan Application and wire the Good Faith Deposit.

23.    The April 14 Letters created a binding set of representations upon which Plaintiffs relied to their detriment. The letters  establish that, as of April 14, 2023, Silver Arch itself had concluded that the transaction was viable and represented that Silver Arch was ready to proceed.

24.    Then, on April 28, just fourteen (14) days after issuing the April 14 Letters, Silver Arch declared that there would be "no closing in May," citing PCR/PZR deficiencies and appraisal

concerns. Critically, these were the same appraisals that Silver Arch had confirmed on April 14, 2023 supported the loan amounts, directly contradicting its prior written representations that it was prepared to proceed toward a May 30, 2023 closing.

25.     On or about May 1, 2023 Silver Arch refused all further communication with Plaintiffs, stating that it was acting "on advice of counsel," the day before the bankruptcy auction of one or more of the Subject Properties scheduled for May 2, 2023, which Silver Arch had known about the auction since at least the Loan Application (which expressly referenced "auction" as a purpose of the loan); and Silver Arch's refusal to communicate on the eve of the auction prevented Bruno from arranging alternative financing in the only window remaining.

26.     The timing of Silver Arch's refusal to communicate, on the eve of the bankruptcy auction, deprived Plaintiffs of any opportunity to arrange alternative financing or otherwise protect their interests with respect to the Subject Properties.

27.     At no point prior to its abrupt reversal did Silver Arch identify any deficiency in Plaintiffs' Loan Application, the Subject Properties, or Plaintiffs' qualifications as borrowers that would justify Silver Arch's refusal to proceed.

28.     The April 14 Letters create an irreconcilable contradiction with Silver Arch's subsequent conduct. If Silver Arch's appraisals supported the loan as represented on April 14, 2023, then Silver Arch's refusal to close was a breach of its obligations. If Silver Arch's appraisals did not in fact support the loan, then the representations in the April 14 Letters were unsupported when made. In either event, Silver Arch is liable to Plaintiffs.

29.     In addition to the Good Faith Deposit, Plaintiffs incurred substantial third-party costs in reliance on Silver Arch's representations and at Silver Arch's direction, including: (a)

$108,727.38 paid to FTI Consulting for financial and legal consulting services required for the loan transaction; (b) $43,600.00 paid to CBRE for appraisals of the collateral portfolio; (c) $10,650.00 paid to Nave Environmental, LLC for Phase I environmental site assessments; (d) $7,760.00 paid to Planning, Zoning & Resource Company, LLC for zoning reports; and (e) $75,000.00 for an insurance deposit. The total Third-Party Costs are not less than $245,737.38 (collectively, the "Third-Party Costs").

30. Silver Arch was aware that Plaintiffs were incurring Third-Party Costs in reliance on Silver Arch's representations that the transaction would proceed to closing, particularly because many of these costs should have been paid by Silver Arch out of the deposits provided to it by Plaintiffs.

31. To date, Silver Arch has failed and refused to provide Plaintiffs with a full and itemized accounting of how the Due Diligence Deposit and Good Faith Deposit funds were expended, if at all.

32. At no time did Silver Arch ever fund or close a loan with Plaintiffs in any amount.

33. Despite due demand therefor, Silver Arch has refused to return any part of the Due Diligence Deposit or Good Faith Deposit.

## COUNT I

## (Breach of Contract)

34.     Plaintiffs repeat and re-allege each and every allegation set forth in Paragraphs 1 through 33 hereinabove with the same full force and effect as if same had been more fully set forth herein at length.

35.     The Term Sheets, the Loan Application, and the associated agreements constitute valid and binding contracts between Plaintiffs and Silver Arch, governed by New York law.

36.     Pursuant to the terms and conditions of those agreements, Silver Arch undertook and was obligated to proceed toward closing the loan transaction in accordance with the terms represented to Plaintiffs, including the representations contained in the April 14 Letters, and to apply the Due Diligence Deposit and Good Faith Deposit solely to the underwriting, appraisal, and origination expenses for which they were collected, with any unused portion to be credited to the Origination Fee at closing or refunded to the borrower.

37.     Plaintiffs fully performed all of their obligations under the agreements, including the payment of the Due Diligence Deposit and the Good Faith Deposit.

38.     Silver Arch breached the agreements by, among other things: (a) refusing to proceed toward closing the loan despite having confirmed that its own appraisals supported the loan and that it was prepared to proceed; (b) failing to provide Plaintiffs with a loan consistent with its representations; (c) refusing to return the Due Diligence Deposit and Good Faith Deposit, or any unspent portion thereof; and (d) failing to provide an itemized accounting of deposit expenditures.

39.     As a direct and proximate result of Silver Arch's breach, Plaintiffs have suffered and sustained damages in an amount not less than $502,755.38, but not limited to, the loss of the Due Diligence Deposit, the Good Faith Deposit, and other consequential damages, together with prejudgment interest thereon.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

40.     Plaintiffs repeat and re-allege each and every allegation set forth in Paragraphs 1 through 39 hereinabove with the same full force and effect as if same had been more fully set forth herein at length.

41.     Implied in the Term Sheets, Loan Application, and associated agreements is a covenant of good faith and fair dealing obligating each party to act in good faith and deal fairly with the other in connection with the performance of their respective obligations.

42.     Silver Arch breached the implied covenant of good faith and fair dealing by, among other things: (a) issuing the April 14 Letters confirming its readiness to proceed and then reversing course approximately fourteen days later, raising new conditions and requirements after collecting substantial deposits from Plaintiffs; (b) refusing all communication with Plaintiffs on the eve of the bankruptcy auction of the Subject Properties, at a time calculated to deprive Plaintiffs of any opportunity to arrange alternative financing or otherwise protect their interests; and (c) directing Plaintiffs to incur Third-Party costs in furtherance of the transaction and  representing that such costs were the responsibility of Plaintiffs in order to continue underwriting and toward closing.

11

43.     Silver Arch's conduct was inequitable and in bad faith in that the delay and ultimate refusal to close was caused and occasioned solely by Silver Arch's own conduct and failure to meet its obligations.

44.     As a direct and proximate result of Silver Arch's breach of the implied covenant, Plaintiffs have suffered damages distinct from those caused by the breach of contract, including but not limited to consequential damages stemming from the loss of one or more of the Subject Properties at the bankruptcy auction, the incurrence of thousands of dollars in Third-party costs in reliance on Silver Arch's representations, and additional damages that flowed directly from Silver Arch's bad-faith conduct in waiting until the eve of the auction to refuse all communication.

## COUNT III
### (Conversion)

45.     Plaintiffs repeat and re-allege each and every allegation set forth in Paragraphs 1 through 44 hereinabove with the same full force and effect as if same had been more fully set forth herein at length.

46.     Plaintiffs at all relevant times had, and continue to have, a possessory right and ownership interest in the funds wired to Silver Arch as the Due Diligence Deposit and the Good Faith Deposit (collectively, the "Deposits").

47.     The Deposits constitute specifically identifiable funds, wired in specific amounts on specific dates from Plaintiffs' accounts directly to Silver Arch for specific and limited purposes set forth in the Term Sheets and Loan Application—namely, to fund Silver Arch's costs of site inspection, appraisal, underwriting, and evaluation procedures, with any unused portion to be credited to the Origination Fee at closing or refunded to the borrower.

48.     Silver Arch was obligated to treat the Deposits in this particular manner and had no right to retain the Deposits, or any portion thereof not actually expended for the limited purposes specified, after it ceased its underwriting activities and refused to proceed to closing.

49.     Plaintiffs have repeatedly demanded that Silver Arch return the Deposits and/or provide a full and itemized accounting of any expenditures made therefrom and refund the unused portion.

50.     Silver Arch has refused to return any portion of the Deposits and has refused to provide any accounting of the manner in which they have been expended, if at all.

51.     By retaining the Deposits in their entirety after the loan transaction was abandoned, with no accounting and no contractual or legal justification for doing so, Silver Arch has exercised unauthorized dominion and control over Plaintiffs' funds in derogation of Plaintiffs' superior possessory rights.

52.     Silver Arch's conduct constitutes conversion of the Deposits.

53.     As a direct and proximate result of Silver Arch's conversion, Plaintiffs have suffered and sustained damages in an amount equal to the value of the Deposits, together with prejudgment interest thereon and such other damages as may be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Silver Arch Capital Partners, LLC, as follows:

(a) Awarding Plaintiffs compensatory damages in an amount to be determined at trial, including but not limited to the return of the Due Diligence Deposit and Good Faith Deposit, reimbursement of all Third-Party Costs, and any other losses caused by Silver Arch's conduct;

(b) Awarding Plaintiffs prejudgment interest on all damages from the date of accrual through the date of judgment at the applicable statutory rate, including without limitation New York CPLR § 5004;

(c) Ordering Silver Arch to provide a full and itemized accounting of all expenditures of the Due Diligence Deposit and the Good Faith Deposit;

(d) Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

**ALVENDIA, KELLY & DEMAREST, LLC**

J. Bart Kelly III, LA Bar No. 24488
P. Hogan Crosby, LA Bar No. 40324
909 Poydras Street, Suite 1625
New Orleans, Louisiana 70112
Phone: (504) 200-0000
Fax: (504) 200-0001
Bart@akdlalaw.com
Hogan@akdlalaw.com
*Attorneys for Plaintiffs*
[Pro Hac Vice Applications to be submitted]

14